been followed by the taxpayer in previous years as well as subsequently. The 10 per cent reduction did not reflect either cost or market value.

In 1921 a great part of the merchandise of the taxpayer was destroyed by fire. Its records also were destroyed, including the inventory which had been taken for 1918. A portion of the goods of the taxpayer included in the inventory was out of style. At the end of 1918 prices on goods were on the increase, the market was on the increase, and goods which were purchased during the latter part of the year cost more than they did in the earlier part of the year.

No evidence was adduced to show the proportion of the goods which was shopworn or out of style or the market value of any particular goods at the end of the year.

No abnormalities affecting income or invested capital existed during the taxable year.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRAMMELL: The taxpayer took its closing inventory for 1918 on the basis of cost and undertook to reduce it to an alleged market by a straight reduction of 10 per cent with respect to certain goods which were claimed to have been shopworn or out of style. The Commissioner properly disallowed such a reduction. The disallowance of such a reduction in inventory for the close of 1918, if the Commissioner accepted a similar reduction in the closing inventory for the previous year which was the opening inventory for the taxable year, would cause an unwarranted shifting of income. But we have no evidence as to what action was taken by the Commissioner for the opening inventory for 1918, and we therefore approve his action in disallowing the reduction in the closing inventory.

---

## APPEAL OF HURST, ANTHONY & WATKINS.

Docket No. 3754.   Submitted September 23, 1925.   Decided November 16, 1925.

L. E. Rusch, C. P. A., for the taxpayer.
J. Arthur Adams, Esq., for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar years 1919, 1920, and 1921 in the

amount of $995.51. The deficiency arose from the refusal of the Commissioner to classify the taxpayer as a personal-service corporation.

### FINDINGS OF FACT.

The taxpayer was incorporated in December, 1915, with its principal place of business at Pittsburgh, Pa., and was engaged in the insurance-agency business. The original incorporators were Lloyd V. Watkins, Oliver C. Hurst, and one Anthony. Watkins had been in the insurance business in Pittsburgh about 10 years, Anthony 7 years, and Hurst 14 years. Each of them had an extensive business acquaintance and a large number of policy holders and clients. The corporation was organized with a capital stock of $25,000, divided into 250 shares of the par value of $100 each. Two hundred and twenty-five shares were immediately issued to the incorporators, each receiving 75 shares. The balance was issued one-third to each on January 1, 1918. The three incorporators each paid in $1,875 in cash and turned over their businesses, which were valued at $5,625 each. Watkins, on account of a severe accident, retired from the firm in 1919. The corporation bought the stock of Watkins and placed it in its treasury. All the stockholders devoted all their time to the business and actively solicited insurance.

The taxpayer represented a number of insurance companies, including fire, auto, casualty, plate glass, etc. The taxpayer collected the insurance premiums for the insurance companies for which it acted as agent and paid these premiums to the various companies, less its commission. In the case of casualty companies, it paid on the 10th day of the second month succeeding the date of the policy. For other companies it remitted on the last day of the third month succeeding the date of the policy. Some of its customers paid in advance, some paid when due and still others were delinquent. Frequently, taxpayer paid the premiums on behalf of delinquent clients. It was customary for the taxpayer to remit the premiums, less commissions, when due, so premiums paid in advance were used to pay for the premiums that were delinquent. On some occasions it was necessary to borrow money or issue checks to be paid when funds were available in order to remit for its delinquent customers.

The office force of the taxpayer consisted of nine employees, as follows: One telephone operator, two bookkeepers, two policy writers for casualty and auto insurance, two policy writers for fire insurance, one reporter of losses, and one general bookkeeper. The taxpayer also used 30 to 40 subagents who were paid commissions.

The assets and liabilities of the taxpayer for the years in question were as follows:

| | Dec. 31, 1919. | Dec. 31, 1920. | Dec. 31, 1921. |
|---|---|---|---|
| **ASSETS** | | | |
| Cash | $2,636.92 | $4,376.19 | $7,210.66 |
| Accounts receivable | 46,586.40 | 65,961.02 | 57,885.07 |
| Liberty bonds | 5,185.86 | 4,485.86 | 4,485.86 |
| Investment | 1,000.00 | 1,000.00 | 3,535.26 |
| Withdrawal by stockholders | 14,066.40 | 13,355.04 | 21,159.35 |
| Furniture and fixtures | 1,000.00 | 800.00 | 1,100.00 |
| Balance account purchase, L. V. Watkins | 4,000.00 | 2,000.00 | |
| Total | 74,475.58 | 91,978.11 | 95,346.20 |
| **CAPITAL AND LIABILITIES** | | | |
| Notes payable | [1] 7,000.00 | [2] 7,038.93 | [3] 6,200.00 |
| Accounts payable | 48,204.12 | 63,886.14 | 66,550.72 |
| Unpaid commissions | 309.91 | 1,243.78 | 2,757.37 |
| Employees' Liberty bond account | 322.50 | | |
| Capital stock | 16,666.67 | 16,666.67 | 16,666.67 |
| Surplus | 1,972.38 | 3,142.59 | 3,171.44 |
| Total | 74,475.58 | 91,978.11 | 95,346.20 |

[1] $4,000 notes to pay Watkins for his capital stock, $3,000 from bank to purchase Liberty bonds.
[2] $750 notes to pay Watkins for his capital stock, $3,888.93 trade acceptance discounted at bank, $2,400 balance due bank on purchase of Liberty bonds.
[3] $3,800 balance of trade acceptance at bank, $2,400 balance in bank on purchase of Liberty bonds.

The gross sales, net income, and expenses for the years in question were as follows:

| | 1919 | 1920 | 1921 |
|---|---|---|---|
| Gross sales | $27,822.97 | $41,520.56 | $37,749.86 |
| Other income | 351.97 | 484.58 | 173.05 |
| | 28,174.94 | 42,005.14 | 37,922.91 |
| **DEDUCTIONS** | | | |
| Ordinary and necessary expense | 15,907.13 | 21,849.94 | 23,325.91 |
| Officers' salaries | 8,181.28 | 14,404.79 | 10,058.66 |
| Miscellaneous expenses | 386.16 | 580.20 | 703.72 |
| | 24,474.57 | 36,834.93 | 34,088.29 |
| Net income | 3,700.37 | 5,170.21 | 3,834.62 |

The itemized statement of ordinary and necessary expenses set forth above is as follows:

| | 1919 | 1920 | 1921 |
|---|---|---|---|
| To balance books | | $288.93 | |
| Purchases | | 877.48 | $1,071.91 |
| Legal expenses | | 581.61 | |
| Advertising | $3,956.26 | 301.75 | 463.35 |
| Auto expense | | 630.27 | 447.00 |
| Telephone, telegraph, stationery and printing | | 3,315.03 | 2,713.88 |
| Postage | | 540.00 | 522.31 |
| Rent | 1,605.00 | 1,825.00 | 2,040.00 |
| Salaries of clerks, stenographers, and bookkeepers | 10,345.87 | 13,489.87 | 16,067.46 |
| | 15,907.13 | 21,849.94 | 23,325.91 |

The income derived from the personal solicitation of the stockholders and its subagents for the years in question was as follows:

| | 1919 | 1920 | 1921 |
|---|---|---|---|
| Direct solicitation | $22,918.90 | $32,852.90 | $26,434.47 |
| Subagents | 4,754.07 | 8,667.81 | 11,040.08 |
| Other sources | 150.00 | | { 46.80<br>228.51 |
| | 27,822.97 | 41,520.56 | 37,749.86 |

The above amounts represent the taxpayer's portion of the commissions and not the total premiums.

#### DECISION.

The determination of the Commissioner is approved. *Appeal of Joseph Emsheimer Insurance Agency*, 1 B. T. A. 649.

---

### APPEAL OF ALLEN-EATON PANEL CO.

Docket No. 1639.    Submitted September 24, 1925.    Decided November 16, 1925.

*Harry M. Jay, C. P. A.*, for the taxpayer.
*F. O. Graves, Esq.*, for the Commissioner.

Before GRAUPNER and TRAMMELL.

This is an appeal from the determination of a deficiency of $2,573.94, income and profits taxes for 1918, 1919, and 1920. The error alleged is the refusal of the Commissioner to permit the taxpayer to value tangible property at an amount in excess of cash or stock paid for the property, for the purpose of determining the invested capital and the amount deductible for depreciation.

#### FINDINGS OF FACT.

The taxpayer is a Tennessee corporation, organized in 1917, with its principal place of business at Memphis. In 1922 it changed its corporate name to the Waterproof Plywood Co., and in 1924 again changed to the Gause-Beard Plywood Co., under which name it is now operating.

In April, 1917, Chester B. Allen took an option on certain land and buildings, known as Fenn Bros. plant, located in South Memphis, paying therefor the sum of $600. He had in mind at that time the formation of a corporation for the purpose of manufacturing plywood.

About May, 1917, the Allen-Eaton Panel Co. was organized with an authorized capital stock of $125,000. Allen subscribed for $20,000 of the stock, which he paid in cash. The corporation took over the option which Allen held on the above-mentioned property and reimbursed him therefor in the amount of $600, representing the cost to him. It later paid the balance due on the property, amounting to $11,900 and $8.40 exchange.

In 1918 an appraisement of the taxpayer's property was made and the report submitted therewith showed the replacement cost of the buildings and equipment, with allowances for depreciation as of August 31, 1918, to be $135,628.75.